IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Linda Greenwood,<br><br>  Plaintiff,<br><br> v.<br><br>FCA US LLC,<br><br>  Defendant. | Case No. 3:21-cv-50270<br><br>Honorable Iain D. Johnston |
| FCA US LLC,<br><br>  Third-Party Plaintiff,<br><br> v.<br><br>SwedishAmerican Hospital,<br><br>  Third-Party Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Linda Greenwood brings this negligence action against FCA US LLC ("FCA") for injuries she sustained during a health fair at the FCA plant in Belvidere, Illinois. Greenwood, an employee of SwedishAmerican Hospital, was allegedly a passenger in a golf cart. She was injured when the driver, an FCA employee, allegedly hit a speed bump at a high rate of speed. SwedishAmerican's participation in the event, and thus Greenwood's participation, was governed by a contract. Invoking an indemnity clause in that contract, FCA filed a third-party complaint against SwedishAmerican alleging that SwedishAmerican must indemnify FCA and provide it a defense against Greenwood's suit. FCA further

1

alleges that SwedishAmerican breached the contract by refusing to offer the defense and indemnification. Dkt. 32. Before the Court is SwedishAmerican's motion to dismiss the third-party complaint. For the reasons set forth below, that motion [34] is granted in part and denied in part.

## A. Background

On October 18, 2018, SwedishAmerican and its employees participated in a health fair at FCA's assembly plant in Belvidere, Illinois.[1] Plaintiff Linda Greenwood, as an employee of SwedishAmerican, participated in that event. At some point during the fair, Greenwood was a passenger in a golf cart driven by an FCA employee. The FCA employee was purportedly driving at an unreasonable speed and hit a speed bump, which resulted in injuries to Greenwood.

After Greenwood filed this negligence suit against FCA, FCA requested indemnification and a defense from SwedishAmerican, who then denied that request. The contract that purportedly governed SwedishAmerican's participation in the health fair included a short paragraph that FCA invoked in demanding indemnification and a defense:

> You understand and agree that no professional liability or public liability insurance coverage is extended by us to you. You agree to hold harmless The StayWell Company and FCA US LLC for any claims for injuries or damages that arise from your participation in this Health Fair.

Dkt. 32-1, ¶ 6. Because SwedishAmerican believes this clause does not require them to indemnify FCA or provide it a defense, SwedishAmerican declined FCA's request.

---

[1] The factual allegations recited here are taken from FCA's third-party complaint. Dkt. 32.

Following SwedishAmerican's declination, FCA filed the instant third-party complaint seeking a declaration that the agreement entitles it to a defense and indemnification "without any cost sharing, apportionment between particular claims or allegations, or limitation on amount" (count I). Dkt. 32, ¶ 23. FCA further claims that SwedishAmerican's decision not to provide a defense or otherwise hold it harmless constitutes a breach of contract (count II). FCA further asserts a claim of contribution (count III). SwedishAmerican moves the Court to dismiss the suit on the theory that the contract does not require it to hold FCA harmless for its own negligence. If the contract does not require indemnification, the argument continues, then FCA has not stated a claim. Much of the parties' argumentation concerns whether SwedishAmerican is required to indemnify FCA for its employee's own alleged negligence (alleged negligent driving of the golf cart).

**B. Analysis**

Under Rule 8, the plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a complaint to be plausible, the plaintiff's factual allegations, as opposed to any legal conclusions, must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr. Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). On a motion to dismiss, the defendant bears the burden of establishing the insufficiency of the

3

complaint's allegations, and thus that the complaint should be dismissed for failure to state a claim. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

The primary objective of a court in a contract dispute governed by Illinois law is to give effect to the parties' intent, which is done primarily by analyzing the language of the contract itself. *Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, 870 F.3d 682, 689 (7th Cir. 2019). "If the words in the contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *Id.* (quoting *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004)). In an insurance declaratory judgment action, Illinois typically courts employ the eight-corners rule, under which the court compares the four corners of the underlying complaint with the four corners of the insurance contract. *State Auto Prop. & Cas. Ins. Co. v. KIN, Inc.*, No. 3:21-cv-50171, 2022 U.S. Dist. LEXIS 38131, at *2 (N.D. Ill. Mar. 2, 2022) (quoting *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579 (7th Cir. 2021)). If the contract's terms are ambiguous or silent on an important term, however, courts may consider extrinsic evidence to determine the parties' intent. *McHale v. W.D. Trucking, Inc.*, 39 N.E.3d 595, 634 (Ill. App. Ct. 2015) ("If an agreement is ambiguous or silent on a particular matter, the court may consider extrinsic evidence regarding the circumstances and the execution of the agreement."); *Motorola Solutions, Inc. v. Zurich Ins. Co.*, 33 N.E.3d 917, 941 (Ill. App. Ct. 2015). FCA's substantive claim, breach of contract, asserts both a duty to indemnify and a duty to defend. Dkt. 32, ¶¶ 25, 26 (alleging harm

4

from defense costs and costs FCA "has incurred and will incur in the future" as a result of this action).

   1. *Duty to indemnify*

In *Westinghouse Elec. Elevator Co. v. La Salle Monroe Bldg. Corp.*, the Illinois Supreme Court articulated the general rule that "an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract, or such intention is expressed in unequivocal terms." 70 N.E.2d 604, 607 (Ill. 1946). The Court reaffirmed the *Westinghouse* holding in *Tatar v. Maxon Constr. Co.*, 294 N.E.2d 272, 274 (Ill. 1973). That general rule would seemingly mandate that a contract use clear terms to unambiguously require a person to indemnify the other person for their own negligence. (For example, "You will indemnify us even for our own negligence.")[2] Still, the Court has interpreted the general rule differently in recent years. Far from analyzing ambiguous provisions, the plain and ordinary language of those contracts in *Westinghouse* and *Tatar* limited indemnification. In *Westinghouse*, the indemnification clause provided indemnification in suits "arising out of any acts or omissions *by the Contractor*." 70 N.E.2d at 606 (emphasis added). In *Tatar*, the indemnification clause covered suits "which may occur upon or about *the Subcontractor's work*." 294 N.E.2d at 274. In other words, those courts did not

---

[2] Upon reading this type of clear language, a reasonable person might wonder who would sign this type of indemnity provision. This question might then lead to a reasonable but speculative belief that perhaps this question is precisely why indemnity provision language is ambiguous.

determine whether the indemnification clauses covered a person's own negligence. The clear terms in those contracts foreclosed the possibility.

More recently, in *Buenz v. Frontline Transp. Co.*, the Illinois Supreme Court again reaffirmed the *Westinghouse* rule but cabined its holding. 882 N.E.2d 525 (Ill. 2008). In that case, John Buenz brought a wrongful death suit on behalf of his deceased wife, who died in a collision involving defendant Vincente Zepeda, an employee of co-defendant Frontline Transportation. *Id.* at 527. The third co-defendant, COSCO, allegedly owned the tractor trailer that Zepeda had been driving. *Id.* The agreement that governed the business relationship between COSCO and Frontline included an indemnification clause that required Frontline to hold COSCO harmless:

> [Frontline] shall indemnify [COSCO] against, and hold [COSCO] harmless for any and all claims, demands, actions, suits, proceeds, costs, expenses, damages, and liability, including without limitation, attorney's fees, arising out of, [in] connection with or resulting from the possession, use, operation or returning of the equipment during all periods when the equipment shall be out of the possession of [COSCO].

*Id.* at 528. Though Zepeda, the driver of the tractor trailer, was a Frontline employee, the underlying complaint alleged negligent acts by both Frontline and COSCO. *Id.* at 527. COSCO then argued that the indemnification clause required Frontline to indemnify COSCO, even for COSCO's own allegedly negligent acts. Frontline countered that the above language did not clearly indicate that the parties intended the indemnification clause to cover COSCO's own negligence. *Id.* at 528.

6

In analyzing the prior case law on this question, the Illinois Supreme Court noted that the prior cases all included limiting language. Far from requiring explicit language that the indemnification clauses could cover one's own negligence, the prior courts had reached their conclusions because the clauses at issue in those cases expressly limited indemnification only to the work done by a specific entity. For example, the indemnification clause in *Westinghouse* limited indemnification to acts done "by the Contractor." *Id.* at 531. Thus, the indemnification clause that the contractor agreed to in *Westinghouse* expressly limited the contractor's potential liability to only those acts done by the contractor. On the other hand, the broad indemnification clause in *Buenz*—recited above—contained no limiting language at all. Thus, because the broad "any and all claims" indemnification clause contained no limiting language, the *Buenz* court held that it "clearly and explicitly provide[d] indemnification for COSCO's own negligence." *Id.* at 534.

SwedishAmerican argues that the hold harmless provision must be read in the context of the first sentence. Here's the provision again:

> You understand and agree that no professional liability or public liability insurance coverage is extended by us to you. You agree to hold harmless The StayWell Company and FCA US LLC for any claims for injuries or damages that arise from your participation in this Health Fair.

Dkt. 32-1, ¶6. So, the first sentence begins the clause by explaining that FCA would not provide SwedishAmerican with any professional or public liability insurance. SwedishAmerican then points to the final phrase of the paragraph, which limits SwedishAmerican's potential liability to only those claims that "arise from [its]

7

participation in this Health Fair." Dkt. 35, at 5, 8. Thus, SwedishAmerican interprets the hold harmless clause as referring to SwedishAmerican's professional participation in the health fair. *Id.* at 5 (arguing that the provision "clearly and unambiguously refers to SAH's provision of health services to FCA employees at the Health Fair"). FCA responds that the "arise from" language is not limiting.

      FCA correctly explains that the contractual language in *Buenz* also contained similar "arising out of" language. That contractual provision was significantly more detailed in defining its broad scope, however. For example, it used words like "without limitation" and "for any and all claims." *Buenz*, 882 N.E.2d at 528. The language in the provision before the Court does not include such broad language. Instead, it merely provides, "You agree to hold harmless The StayWell Company and FCA US LLC for any claims for injuries or damages that arise from your participation in this Health Fair." So, the language here is not as inclusive as the language in *Buenz*. But SwedishAmerican's argument that the "limiting" language excludes coverage for FCA's negligence nevertheless misses the mark at this stage.

      At a minimum, the language is ambiguous. It certainly is not the clear limiting language present in *Westinghouse* or its progeny cases. And FCA's breach of contract claim remains at the pleading stage; where the Court is not tasked with deciding the ultimate question. Thus, FCA does not need to *establish* a breach of contract. It need only plead a plausible claim that SwedishAmerican breached an agreement. *Twombly*, 550 U.S. at 570. The agreement is open to multiple interpretations. It is plausible that SwedishAmerican did not agree to indemnify

8

FCA for its own negligence. It is also plausible that it did. Extrinsic evidence is required to illuminate the parties' intent, which is an exercise that is not appropriate on a motion to dismiss.

Thus, the Court denies SwedishAmerican's motion to dismiss FCA's breach of contract claim. The Court states no opinion at this time on the merits of the question. On the contrary, the point is merely that SwedishAmerican has not met its burden of establishing the insufficiency of the complaint as a matter of law. Because the contract is silent on the question of whether SwedishAmerican's duty to indemnify includes FCA's own negligence, the Court will hear extrinsic evidence of the parties' intent.[3]

2. *Duty to defend*

FCA also claims that SwedishAmerican breached its contract to defend FCA in the underlying litigation. Dkt. 32, ¶ 25; *see also id.* ¶ 19 (explaining that FCA tendered its *defense* and indemnification to SwedishAmerican). SwedishAmerican moves to dismiss this claim because no duty to defend language exists in the contract. Dkt. 35, at 8. In its response brief, FCA failed to respond to SwedishAmerican's argument that the contractual language contains no provision

---

[3] SwedishAmerican's argument further attempts to define its participation in the event in a limited way, based on the role it agreed to play in the health event. This is not an unreasonable argument. But again, this is the pleading stage and the underlying incident occurred while a SwedishAmerican employee was being transported in a golf cart on site. The Court cannot say at this time that such transportation was not part of SwedishAmerican's participation or that the parties intended to exclude such transportation activities. Instead, the Court's holding is merely that FCA's claim is plausible. Lastly, the Court notes that SwedishAmerican already refused to indemnify FCA, thus rendering the question of indemnification ripe for review, and neither party has argued to the contrary.

9

requiring it to provide FCA a defense or to pay attorney's fees. Indeed, SwedishAmerican argued in reply that FCA had waived any argument regarding a defense or attorney's fees. Dkt. 46, at 2. Notwithstanding the waiver argument in the reply brief, FCA did not seek leave of Court to file a sur-reply to respond to the argument. FCA appears to have abandoned the claim. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." (quoting *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999)).

Thus, the Court dismisses FCA's duty to defend claim without prejudice. The duty to defend is separate and distinct from the duty to indemnify, *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1018 (Ill. 2010), and FCA has pointed to no language in the contract that evidences an agreement that SwedishAmerican would defend FCA or pay its attorney's fees. *See CSX Transp. v. Chicago & N.W. Transp. Co.*, 62 F.3d 185, 192 (7th Cir. 1995) ("And, in any event, section 8.1 does not impose a duty to defend on CNW as an aspect of the indemnification. . . . Under Illinois law, 'attorney fees are recoverable where required by the specific terms of a written contract of indemnity.' Section 8.1 does not mention attorneys' fees and therefore does not support an award of those fees." (citations omitted)). Furthermore, FCA appears to have abandoned this claim. The dismissal, however, is without prejudice. FCA may amend its third-party complaint to more clearly allege a duty to defend. If FCA

10

chooses to amend, however, it must do so by April 8, 2022, and it must explain how its failure to engage in briefing this question was not an abandonment of the claim.

   3. *Declaratory relief*

Notwithstanding the breach of contract claim in count II, FCA seeks a declaration that SwedishAmerican breached the contract in count I. Specifically, FCA seeks a declaration that the indemnification clause imposes duties on SwedishAmerican:

> SwedishAmerican is obligated under the Agreement and by virtue of its breach of its duty to FCA in the *Greenwood* Lawsuit, to hold FCA harmless with respect to the full amount of all defense costs and any liability or settlement in the *Greenwood* Lawsuit without any costs sharing, apportionment between particular claims or allegations, or limitation on amount.

Dkt. 32, ¶ 23. SwedishAmerican moves the Court to dismiss this count as duplicative of FCA's claim of a breach of contract in count II. Dkt. 35, at 10. FCA responds that it seeks a declaration is not redundant because "it seeks a declaration that its interpretation of the indemnification clause is correct." Dkt. 43, at 13.

The Declaratory Judgment Act gives federal courts the discretion to "declare the rights and other legal relations" of the parties. 28 U.S.C. § 2201(a). District courts maintain "unique and substantial discretion in whether to declare the rights of litigants." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019) (quoting *Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018)). Though the Act gives federal courts the option to declare rights, courts regularly decline to exercise jurisdiction over requests for declaratory judgments when the request "substantially overlaps" with a plaintiff's substantive claim. *WSP USA, Inc. v.*

11

*Nautilus Ins. Co.*, No. 19-cv-6731, 2021 U.S. Dist. LEXIS 198138, at *16 n.6 (N.D. Ill. Oct. 14, 2021); *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 737 (N.D. Ill. 2018); *see also Ellenby Techs., Inc. v. FireKing Sec. Grp.*, No. 20-cv-2253, 2021 U.S. Dist. LEXIS 119436, at *8 (N.D. Ill. June 28, 2021) (declining to dismiss the claim because it was "not entirely redundant"). Thus, the question here is whether the request for a declaration substantially overlaps with FCA's breach of contract claim.

In this case, FCA seeks a declaration this its interpretation of the indemnification clause is correct. It also seeks to hold SwedishAmerican liable for breach of that same provision. FCA is correct that the elements necessary to prove those two claims are different. *See* dkt. 43, at 13. But the two claims nonetheless substantially overlap. FCA's breach of contract claim assumes its interpretation of the indemnification clause is correct. It seeks monetary damages for SwedishAmerican's failure "to hold FCA harmless with respect to any of the amounts FCA has incurred and will incur in the future as a result of the *Greenwood* Lawsuit." Dkt. 32, ¶ 26. If FCA is successful on its breach of contract claim, then its interpretation of the indemnification clause must necessarily be correct. The Court cannot hold for FCA on its breach of contract claim without holding that its interpretation of the indemnification clause is correct. Thus, the two claims are redundant, and the Court exercises its discretion to decline jurisdiction over FCA's declaratory judgment claim. It is thus dismissed without prejudice but without leave to amend. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935

12

F.3d 573, 581 (7th Cir. 2019); *Sing For Service, LLC v. 18W Holdings, Inc.*, No. 20-cv-4018, 2021 U.S. Dist. LEXIS 21401, at *10 (N.D. Ill. Feb. 4, 2021) (declining to exercise jurisdiction over claim for declaratory relief and dismissing without prejudice).

    4. *Contribution*

In count III of the third-party complaint, FCA brings a claim in the alternative for contribution against SwedishAmerican, pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01 *et seq*. Dkt. 32, ¶ 32. FCA alleges that Greenwood, as an employee of SwedishAmerican, had a duty to exercise reasonable care as a passenger in the golf cart. *Id.* ¶ 35. It further alleges that she breached that duty and thus contributed to her own injuries. *Id.* ¶ 38. FCA includes no allegations of negligence on the part of SwedishAmerican itself. Instead, the allegations are confined to the acts of Plaintiff Linda Greenwood. Thus, FCA's contribution claim is entirely based on a theory of vicarious liability.

SwedishAmerican moves to dismiss FCA's contribution claim. In support, it contends that the Illinois Joint Tortfeasor Contribution Act does not allow for contribution on a theory of vicarious liability. Dkt. 35, at 12 ("It is therefore axiomatic that a third-party contribution claim cannot stand against the Plaintiff's employer based on injuries the Plaintiff allegedly caused to herself.").

The Illinois Joint Tortfeasor Contribution Act expressly provides that a "right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount

13

paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." 740 ILCS 100/2. Thus, the Act specifically disallows recovery of more than a person's pro rata share of liability. Interpreting this same language, another court in this district held that to successfully bring a third-party contribution claim, the defendant must be able to point to independent acts of negligence on the part of the plaintiff's employer. *Shelvy v. Wal-Mart Stores East, L.P.*, No. 11-cv-9176, 2013 U.S. Dist. LEXIS 17220, at *5–6 (N.D. Ill. Feb. 8, 2013). In other words, a theory of contribution cannot be based solely on a theory of vicarious liability. "Thus for a third-party claimant to be entitled to relief from a plaintiff's employer under a contribution theory at the same time it asserts that the employee was contributorily negligent, it must allege that the employer's negligence was separate and distinct from that of the plaintiff-employee." *Id.* at *6.

Furthermore, FCA's argument is nonsensical, which may explain the absence of case law on this topic. If FCA is correct that Greenwood was contributorily negligent, then any damages award she may receive would be reduced accordingly. Because FCA would not have to pay the portion of the damages for which Greenwood was responsible, FCA would never have cause to seek repayment of that amount from Greenwood's employer on a theory of vicarious liability. To hold otherwise would require SwedishAmerican to pay FCA the amount of damages Greenwood was responsible for and that FCA never had to pay Greenwood in the

14

first place. That result is expressly forbidden by the plain text of the statute quoted above.

FCA's only response is that it has not yet had the aid of discovery to determine whether SwedishAmerican committed any independent acts of negligence. Dkt. 43, at 13. The argument is misses the point. FCA's contribution claim unambiguously seeks recovery Greenwood's alleged negligence. It does not allege any negligence against SwedishAmerican. Thus, it does not state a valid claim for contribution, as explained above. In determining the sufficiency of the allegations, the Court must necessarily analyze the allegations, not some future allegations that could potentially be brought later in an amended pleading if discovery unearths some negligent acts on the part of SwedishAmerican. Thus, the Court grants SwedishAmerican's motion to dismiss FCA's contribution claim. If FCA uncovers evidence in discovery that it believes shows negligence perpetrated by SwedishAmerican, it may file an amended third-party complaint, as long as it does so before the case management order's fact discovery deadline. But any claim for contribution against SwedishAmerican for the allegedly negligent acts of Plaintiff Linda Greenwood are dismissed with prejudice as improper under the Illinois Joint Tortfeasor Contribution Act.

### C. Conclusion

For the reasons explained above, SwedishAmerican's motion to dismiss the third-party complaint [34] is granted in part and denied in part. For clarity, the Court recites its holdings below:

15

1) The Court denies SwedishAmerican's motion to dismiss FCA's breach of contract for failure to indemnify claim;

2) The Court dismisses FCA's breach of contract for failure to provide a defense claim, but the dismissal is without prejudice to amend by April 8, 2022, provided FCA explains why its failure to engage in briefing is not an abandonment of the claim;[4]

3) The Court, in its discretion, declines to exercise jurisdiction over FCA's claim for declaratory relief and dismisses it without prejudice but without leave to amend; and,

4) The Court dismisses FCA's claim for contribution for the acts of Greenwood with prejudice, as it is improper under the Illinois Joint Tortfeasor Contribution Act. If discovery provides sufficient evidence to plead negligence by SwedishAmerican, FCA may file an amended pleading before the close of fact discovery for this claim.

Date: March 22, 2022

_____
Honorable Iain D. Johnston
United States District Judge

---

[4] The parties are directed to review the Court's standing order on failures to respond, though it was published after briefing had concluded for this motion. It can be found on the Court's website.